**In re ATLANTIC GULF & WEST INDIES S. S. LINES et al.**

District Court, S. D. New York.
June 18, 1930.

722

See, also, 20 F.(2d) 975.

Chauncey I. Clark and P. Fearson Shortridge, both of New York City, for petitioners.

Cletus Keating and Edwin S. Murphy, both of New York City, for claimant Federal Shipbuilding & Dry Dock Co.

FRANK J. COLEMAN, District Judge.

The only questions presented are whether an award for salvage should be made on account of the tug Federal No. 2, and, if so, in what amount.

On December 11, 1926, between 5:30 and 6 p. m. a number of the cargo tanks on the oil carrier Agwisun exploded while she was lying moored to a dock in Erie basin. At that time the tug Federal No. 2 was about a quarter of a mile distant in the harbor, and she, with very great alertness, proceeded into Erie basin, while diligently preparing her pumps to render such assistance as might be possible. Upon reaching the tanker, she first removed a number of seamen and officers who were congregated on the stern in a very anxious, if not frightened, state of mind because they thought they would be unable to reach the pier alongside of which the tanker was moored. The stern projected beyond the pier, and some of the explosions had taken place between the stern and the pier end. After landing them at a neighboring pier, the Federal No. 2 returned to the tanker and pumped water on her for a period of forty minutes.

The entire time during which the Federal No. 2 rendered service was approximately one hour, counting from the moment when she started for the Agwisun until she finished pumping and withdrew. The service did not require a high order of skill, but it was rendered with promptitude and diligence. The amount of risk involved was afterwards disclosed to be practically nothing; but for the first fifteen minutes it appeared to be a hazardous undertaking. Not only was there no explosion after the Federal No. 2 came within the range of danger, but from the facts later learned there was practically no chance of one. On the other hand, when the tug arrived, the men on the stern of the Agwisun had such fear of another explosion that they evinced great anxiety to be removed, and another tug apparently withdrew from the vicinity while the Federal No. 2 was approaching.

In order to gauge the amount of risk and the effectiveness of the service, the paramount consideration is the amount of fire that was on the tanker when the tug approached. The Agwisun was of steel construction, about 429 feet long, having nine cargo tanks and a fuel oil bunker tank. The engine room was at the stern, and a bridge superstructure was amidships about over cargo tank No. 3. The explosions had occurred between the bridge and the engine room at the stern, and blew out the deck and some of the side plates adjacent to cargo tanks Nos. 5 to 9, inclusive. There was no explosion forward of No. 5 nor abaft of No. 9.

Prior to the explosions, all the cargo tanks were empty except the first three, which contained water ballast. The bunker, however, which was located between No. 9 and the engine room, was filled with oil. Apparently all the cargo tanks had been steamed out, and No. 4, which was just forward of the explosion and abaft the bridge, had been washed as well as steamed.

I am convinced from all the evidence in the case that the only fire on the tanker when the tug first arrived was such as would probably have done no further damage. It consisted principally of flames from a small drip barrel on the main deck, apparently over tank No. 4 and abaft the bridge. There was also a smoldering rope further aft and perhaps some other points where slight smoldering was occurring near the exploded tanks. The testimony of the tug's master and engineer is quite vague and indefinite as to what fire appeared, whereas the testimony of the men in the New York fire department, who arrived within a few minutes after the

Federal No. 2, and who actually went on board the Agwisun, is very clear and convincing. Furthermore, the photographs taken on the next day show inflammable material in an uncharred state in various parts of the boat, which would be impossible if there were much more fire present when the tug arrived. Considering the condition of the Agwisun after the explosions, I cannot see how that amount of fire could give rise to much risk. None of it apparently was in a position to endanger the full bunker, and the nearest unexploded tank was No. 4, which had not only been steamed and washed, but was open at the time.

It should be borne in mind, however, that, when the tug began her service, these facts were known to no one, and the appearances gave reason to believe that the danger of further explosion was large.

As to the effectiveness of the tug service, I believe that in addition to removing the men, she extinguished the flames in the drip barrel and helped to cool the steel in the exploded area. She played a stream 2½ inches in diameter throwing 225 gallons a minute and also a smaller stream from the deck hose. Almost from the time she started to do this there were present two fire boats and a land company also playing streams on the tanker.

I think the situation is one for an award of salvage, but, in view of the slight effect of the service, the short period during which it was rendered, the small risk actually incurred, and the low grade of skill required, I think the award should be small. The service was, however, commendable, and, if the emergency had been greater, I have no doubt but that the men on Federal No. 2 would have risen to it. The value of the tug upon the conflicting evidence before me I find to have been at that time approximately $50,000. The value of the Agwisun has been determined by a special commissioner to have been $341,395.84 after the explosions. This I believe to be too high, because I think the commissioner did not give sufficient effect to the risk involved in raising and repairing her. He did make some allowance for this risk in deducting the full amount of the salvage company's bill for raising, which was on a no-cure-no-fee basis, but the risk accounted for in that item was merely the risk of losing the compensation for raising the vessel and not the risk of losing the entire investment. I do not believe that the operation of raising the vessel and repairing her was a very hazardous one, but I think some allowance should be made for the risk of losing the entire in-

vestment. I therefore fix the value of the Agwisun at $275,000.

Under all the circumstances I believe that an award of $1,000 would be proper. Settle decree on notice.